

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

October 2, 2014

TRANSMITTAL OF NOTICE OF APPEAL FILED BY COUNSEL

SEE NOTICE OF ELECTRONIC FILING

**RE:** Flute v The United States of America

District Court Case No.: 13-cv-01836-PAB-CBS
Filed by: Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood on 10/01/14
Fee Status: Fee paid
Type of Counsel: Retained counsel
Other Pending Appeals:

Attached are the following documents for the parties in connection with the notice of appeal and a copy of the docket sheet.

The parties are directed to the U.S. Court of Appeals for the 10th Circuit website (http://www.ca10.uscourts.gov) to obtain any necessary forms, such as the Transcript Order Form, Docketing Statement or Designation of Record. Instructions for ordering transcripts are attached.

JEFFREY P. COLWELL, CLERK

by   s/ Jennifer Hawkins
     Deputy Clerk

cc:    Clerk, U.S. Court of Appeals for the Tenth Circuit with the preliminary record

**INSTRUCTIONS FOR ORDERING TRANSCRIPTS:**

Please review the enclosed docket sheet and locate the docket entry for the minutes of the proceedings you wish to have transcribed.  In the entry will be either:
- the name of the court reporter, or
-"FTR" (meaning the proceeding was digitally recorded before either a District Court Judge or a Magistrate Judge).

If a name of a court reporter appears, please contact that reporter directly to make arrangements for the preparation of the transcript.  The names, addresses and phone numbers for the court reporters and some of the contract reporters are on the attached sheet.

If the proceeding was before a District Court Judge (other than Judge Richard P. Matsch) and was recorded by an E.C.R. operator or FTR, please contact Federal Reporting Service.  Their address and phone number are on the attached list.

If the proceeding was before Judge Richard P. Matsch please contact Kathy Terasaki. Her phone number is on the attached list.

If the proceeding was held before a Magistrate Judge Please contact Avery Woods Reporting Service.  Their address and phone numbers are on the attached list.

## COURT REPORTERS
Suzanne Claar
3629 E. Phillips Ave.
Centennial, CO 80122
303-770-4794

Paul Zuckerman
303-629-9285

Gwen Daniel
303-571-4084

Therese Lindblom
303-628-7877

Kara Spitler
303-623-3080

Janet Coppock (fka Morrissey)
303-893-2835

Darlene Martinez
303-296-2008

Tracy Weir
303-298-1207

Tamara Hoffschildt
303-292-1088

Mary George
303-296-2638

## FTR OPERATOR
Kathy Terasaki
FTR Operator - (FTR-RPM)
303-335-2095

## DISTRICT COURT JUDGE - DIGITAL FTR
Federal Reporting Service, Inc.
17454 East Asbury Place
Aurora, CO 80013
303-751-2777

## MAGISTRATE JUDGE - DIGITAL - FTR
Avery Woods Reporting Service, Inc.
455 Sherman Street, Suite 250
Denver, CO 80203
303-825-6119

## OTHER COURT REPORTERS
Adrienne Whitlow
15400 Winding Moss Dr.
Houston, TX 77068
303-668-6887

Case 1:13-cv-01836-PAB-CBS   Document 39-1   Filed 10/02/14   USDC Colorado   Page 1 of 7
Case: 1:13-cv-1836   As of: 10/02/2014 08:05 AM MDT   1 of 7
Appellate Case: 14-1405   Document: 01019319924   Date Filed: 10/02/2014   Page: 4
APPEAL,NDISPO,TERMED

# U.S. District Court
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:13−cv−01836−PAB−CBS

Flute et al v. United States of America, The et al
Assigned to: Judge Philip A. Brimmer
Referred to: Magistrate Judge Craig B. Shaffer
Cause: 05:551 Administrative Procedure Act

Date Filed: 07/11/2013
Date Terminated: 09/04/2014
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: Federal Question

**Plaintiff**

**Homer Flute**                    represented by   **Jason B. Aamodt**
Aamodt Law Firm
1723 East 15th Street
Suite 100
Tulsa, OK 74104
918−347−6169
Fax: 918−398−0514
Email: Jason@aamodt.biz
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dallas Lynn Dale Strimple**
Aamodt Law Firm
1723 E. 15th Street
Suite 100
Tulsa, OK 74104
918−347−6169
Fax: 918−398−0514
Email: dallas@aamodt.biz
*ATTORNEY TO BE NOTICED*

**David Arthur Lane**
Killmer, Lane &Newman, LLP
1543 Champa Street
#400
Denver, CO 80202
303−571−1000
Fax: 303−571−1001
Email: dlane@kln−law.com
*ATTORNEY TO BE NOTICED*

**Krystina Elizabeth Phillips**
Aamodt Law Firm
1723 E. 15th Street
Suite 100
Tulsa, OK 74104
918−347−6169
Fax: 918−398−0514
Email: krystina@aamodt.biz
*ATTORNEY TO BE NOTICED*

**Larry Derryberry**
Derryberry &Naifeh, LLP
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
405−528−6569
Fax: 405−528−6462
Email: lderryberry@derryberrylaw.com
*ATTORNEY TO BE NOTICED*

Case 1:13-cv-01836-PAB-CBS   Document 39-1   Filed 10/02/14   USDC Colorado   Page 2 of 7
Case: 1:13-cv-1836   As of: 10/02/2014 08:05 AM MDT   2 of 7
Appellate Case: 14-1405   Document: 01019319924   Date Filed: 10/02/2014   Page: 5

**Michael David Goodstein**
Hunsucker Goodstein, PC−DC
5335 Wisconsin Avenue NW
Suite 360
Washington, DC 20015
202−895−5380
Fax: 202−895−5390
Email: mgoodstein@hgnlaw.com
*ATTORNEY TO BE NOTICED*

**Sarah Marie Morris**
Civil Rights Education and Enforcement
Center
104 Broadway
Suite 400
Denver, CO 80203
303−757−7901
Email: smorris@creeclaw.org
*ATTORNEY TO BE NOTICED*

**David Ford Askman**
Hunsucker Goodstein, P.C.
730 17th Street
Suite 220
Denver, CO 80202
720−465−4338
Fax: 720−302−2700
Email: daskman@hgnlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Simpson, Jr**                          represented by   **Jason B. Aamodt**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Dallas Lynn Dale Strimple**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **David Arthur Lane**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Krystina Elizabeth Phillips**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Larry Derryberry**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Michael David Goodstein**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Sarah Marie Morris**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **David Ford Askman**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

Case 1:13-cv-01836-PAB-CBS   Document 39-1   Filed 10/02/14   USDC Colorado   Page 3 of 7
Case: 1:13-cv-1836   As of: 10/02/2014 08:05 AM MDT   3 of 7
Appellate Case: 14-1405   Document: 01019319924   Date Filed: 10/02/2014   Page: 6

**Plaintiff**

| | | |
|---|---|---|
| **Thompson Flute, Jr** | represented by | **Jason B. Aamodt** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Dallas Lynn Dale Strimple** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **David Arthur Lane** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Krystina Elizabeth Phillips** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Larry Derryberry** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Michael David Goodstein** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Sarah Marie Morris** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **David Ford Askman** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Dorothy Wood** | represented by | **Jason B. Aamodt** |
| *on behalf of themselves and others* | | (See above for address) |
| *similarly situated* | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Dallas Lynn Dale Strimple** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **David Arthur Lane** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Krystina Elizabeth Phillips** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Larry Derryberry** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Michael David Goodstein** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Sarah Marie Morris** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

Case 1:13-cv-01836-PAB-CBS   Document 39-1   Filed 10/02/14   USDC Colorado   Page 4 of 7
Case: 1:13-cv-1836   As of: 10/02/2014 08:05 AM MDT   4 of 7
Appellate Case: 14-1405   Document: 01019319924   Date Filed: 10/02/2014   Page: 7

**David Ford Askman**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America, The**          represented by   **Peter Kryn Dykema**
U.S. Department of Justice−DC−601 D
Street
601 D Street, N.W.
Washington, DC 20004
202−305−0436
Fax: 202−305−0274
Email: peter.dykema@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Department of the Interior, The**         represented by   **Peter Kryn Dykema**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Indian Affairs, The**           represented by   **Peter Kryn Dykema**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2013 | 1 | COMPLAINT *for Injunctive and Declaratory Relief from Plaintiffs* against All Defendants (Filing fee $ 400, Receipt Number 1082−3443958), filed by Dorothy Wood, Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr. (Attachments: # 1 Summons Summons in a Civil Action, # 2 Civil Cover Sheet)(Askman, David) (Entered: 07/11/2013) |
| 07/11/2013 | 2 | Case assigned to Judge Philip A. Brimmer and drawn to Magistrate Judge Craig B. Shaffer. Text Only Entry (sphil, ) (Entered: 07/12/2013) |
| 07/11/2013 | 3 | SUMMONS issued by Clerk. Magistrate Judge Consent Form attached. (Attachments: # 1 Magistrate Judge Consent Form) (sphil, ) (Entered: 07/12/2013) |
| 07/16/2013 | 4 | ORDER REFERRING CASE to Magistrate Judge Craig B. Shaffer for non−dispositive matters. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non−dispositive motions, and (4) conduct a pretrial conference and enter a pretrial order. Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, this court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. By Judge Philip A. Brimmer on 7/16/13. Text Only Entry (pabsec) (Entered: 07/16/2013) |
| 07/16/2013 | 5 | ORDER setting a Scheduling Conference on 9/24/2013 at 10:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer, by Magistrate Judge Craig B. Shaffer on 7/16/13. (cbssec) (Entered: 07/16/2013) |

Case 1:13-cv-01836-PAB-CBS   Document 39-1   Filed 10/02/14   USDC Colorado   Page 5 of 7
Case: 1:13-cv-1836   As of: 10/02/2014 08:05 AM MDT   5 of 7
Appellate Case: 14-1405   Document: 01019319924   Date Filed: 10/02/2014   Page: 8

| | | |
|---|---|---|
| 07/22/2013 | 6 | SUMMONS Returned Executed upon defendant(s) Bureau of Indian Affairs, The served on 7/18/2013, answer due 9/16/2013; Department of the Interior, The served on 7/18/2013, answer due 9/16/2013; United States of America, The served on 7/18/2013, answer due 9/16/2013. (Attachments: # 1 Affidavit of Service, US Attorney General, # 2 Affidavit of Service, US Attorney for the Dist. of Colorado, # 3 Affidavit of Service, Asst. Sec. of Indian Affairs, # 4 Affidavit of Service, Sec. of Interior, # 5 Affidavit of Service, US Attorney for the Dist. of Columbia)(Askman, David) (Entered: 07/22/2013) |
| 08/12/2013 | 7 | NOTICE of Entry of Appearance by Peter Kryn Dykema on behalf of All Defendants (Dykema, Peter) Modified on 8/13/2013. Counsel refiled at 10 with the signature of the attorney entering his appearance (mnfsl, ). (Entered: 08/12/2013) |
| 08/12/2013 | 8 | NOTICE of Entry of Appearance *of Sarah Morris for the Plaintiffs* by Sarah Marie Morris on behalf of Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood (Morris, Sarah) (Entered: 08/12/2013) |
| 08/12/2013 | 9 | NOTICE of Entry of Appearance *of David Lane* by David Arthur Lane on behalf of Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood (Lane, David) (Entered: 08/12/2013) |
| 08/13/2013 | 10 | NOTICE of Entry of Appearance *(Corrected)* by Peter Kryn Dykema on behalf of All Defendants (Dykema, Peter) (Entered: 08/13/2013) |
| 08/23/2013 | 11 | NOTICE of Entry of Appearance by Michael D. Goodstein for Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Goodstein, Michael) Modified on 8/23/2013 to correct text (mnfsl, ). (Entered: 08/23/2013) |
| 09/06/2013 | 12 | NOTICE of Entry of Appearance by Larry Derryberry on behalf of All Plaintiffs (Derryberry, Larry) (Entered: 09/06/2013) |
| 09/12/2013 | 13 | NOTICE of Entry of Appearance by Krystina Elizabeth Phillips on behalf of All Plaintiffs (Phillips, Krystina) (Entered: 09/12/2013) |
| 09/12/2013 | 14 | NOTICE of Entry of Appearance by Dallas Lynn Dale Strimple on behalf of All Plaintiffs (Strimple, Dallas) (Entered: 09/12/2013) |
| 09/12/2013 | 15 | NOTICE of Entry of Appearance by Jason B. Aamodt on behalf of All Plaintiffs (Strimple, Dallas) Modified on 9/12/2013 to correct attorney(mnfsl, ). (Entered: 09/12/2013) |
| 09/13/2013 | 16 | NOTICE of Entry of Appearance by Jason B. Aamodt on behalf of All Plaintiffs (Aamodt, Jason) (Entered: 09/13/2013) |
| 09/16/2013 | 17 | MOTION to Dismiss *the Complaint* by Defendants Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The. (Attachments: # 1 Continuation of Main Document Memorandum in Support, # 2 Exhibit (List of Exhibits), # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11)(Dykema, Peter) (Entered: 09/16/2013) |
| 09/17/2013 | 18 | Proposed Scheduling Order by Defendants Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The, Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Askman, David) (Entered: 09/17/2013) |
| 09/20/2013 | 19 | MOTION for Leave to Appear *by Telephone* by Defendants Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The. (Attachments: # 1 Proposed Order (PDF Only))(Dykema, Peter) (Entered: 09/20/2013) |
| 09/20/2013 | 20 | MEMORANDUM regarding 19 MOTION for Leave to Appear *by Telephone* filed by Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The. Motion referred to Magistrate Judge Craig B. Shaffer by Judge Philip A. Brimmer on 9/20/13. Text Only Entry (pabsec) (Entered: 09/20/2013) |
| 09/20/2013 | 21 | ORDER granting Defendants' 19 Motion for Leave to Appear By Telephone at the 9/24/13 hearing. Mr. Dykema shall contact the court by dialing 303.844.2117 at the scheduled time. Text Only Entryby Magistrate Judge Craig B. Shaffer on 9/20/13. |

| | | (cbssec) (Entered: 09/20/2013) |
|---|---|---|
| 09/24/2013 | 22 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Craig B. Shaffer: Scheduling Conference on 9/24/2013. ORDERED: All further proceedings and discovery shall be stayed pending a ruling on Defendants' Motion to Dismiss the Complaint. FTR: Courtroom A402 − C. Covington. (ccovi) (Entered: 09/24/2013) |
| 09/24/2013 | 23 | MINUTE ORDER. Defendants' 17 53−page MOTION to Dismiss fails to comply with § III.A of this Court's Practice Standards. Given the long history of the events at issue, defendants' motion will be accepted for filing, and plaintiffs will be granted leave to file a response not to exceed 53 pages. For future filings, the parties are reminded to file a motion for leave to exceed the page limitations. By Judge Philip A. Brimmer on 9/24/13. (mnfsl, ) (Entered: 09/24/2013) |
| 10/04/2013 | 24 | MOTION for Extension of Time to File Response/Reply as to 17 MOTION to Dismiss *the Complaint* by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Attachments: # 1 Proposed Order (PDF Only))(Askman, David) (Entered: 10/04/2013) |
| 10/07/2013 | 25 | MINUTE ORDER granting 24 Motion for Extension of Time. Plaintiffs may have until October 24, 2013 to respond to the motion to dismiss 17 filed by defendants United States of America, Department of the Interior, and Bureau of Indian Affairs. The Court clarifies that the response is currently due on October 10, 2013. By Judge Philip A. Brimmer on 10/7/13. Text Only Entry(pabsec) (Entered: 10/07/2013) |
| 10/24/2013 | 26 | RESPONSE to 17 MOTION to Dismiss *the Complaint* filed by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Attachments: # 1 Exhibit 1)(Askman, David) (Entered: 10/24/2013) |
| 11/04/2013 | 27 | Unopposed MOTION for Extension of Time to File Response/Reply as to 17 MOTION to Dismiss *the Complaint and Unopposed Motion for Leave to File Over−length Brief* by Defendants Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The. (Attachments: # 1 Proposed Order (PDF Only))(Dykema, Peter) (Entered: 11/04/2013) |
| 11/05/2013 | 28 | MINUTE ORDER granting 27 Motion for Extension of Time and for Leave to File an Over−Length Brief. Defendants may have until November 14, 2013 to file a reply in support of their motion to dismiss 17 . The Court clarifies that the reply is currently due November 12, 2013. The reply shall not exceed 20 pages. By Judge Philip A. Brimmer on 11/5/13. Text Only Entry(pabsec) (Entered: 11/05/2013) |
| 11/14/2013 | 29 | REPLY to Response to 17 MOTION to Dismiss *the Complaint* filed by Defendants Bureau of Indian Affairs, The, Department of the Interior, The, United States of America, The. (Dykema, Peter) (Entered: 11/14/2013) |
| 11/18/2013 | 30 | Unopposed MOTION for Leave to *FILE SURREPLY* 29 Reply to Response to Motion by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Attachments: # 1 Proposed Order (PDF Only))(Askman, David) (Entered: 11/18/2013) |
| 11/19/2013 | 31 | MINUTE ORDER granting 30 Motion for Leave to File Surreply. Plaintiffs may file a surreply to the United States' reply 29 in support of its motion to dismiss 17 on or before December 2, 2013. The surreply shall not exceed 20 pages. By Judge Philip A. Brimmer on 11/19/13. Text Only Entry(pabsec) (Entered: 11/19/2013) |
| 11/26/2013 | 32 | Unopposed MOTION for Extension of Time to File Response/Reply as to 17 MOTION to Dismiss *the Complaint* by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Attachments: # 1 Proposed Order (PDF Only) Plaintiffs' Proposed Order)(Strimple, Dallas) (Entered: 11/26/2013) |
| 11/26/2013 | 33 | MINUTE ORDER granting 32 Motion for Extension of Time. Plaintiffs may have until December 9, 2013 to file their surreply to defendants' motion to dismiss 17 . By Judge Philip A. Brimmer on 11/26/13. Text Only Entry(pabsec) (Entered: 11/26/2013) |

| 12/09/2013 | 34 | SURREPLY re 17 MOTION to Dismiss *the Complaint* filed by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood. (Askman, David) (Entered: 12/09/2013) |
|---|---|---|
| 05/06/2014 | 35 | NOTICE of Change of Address/Contact Information by David Ford Askman (Askman, David) (Entered: 05/06/2014) |
| 09/04/2014 | 36 | ORDER. ORDERED that Defendants Motion to Dismiss [Docket No. 17] filed by defendants the United States of America, the Department of the Interior, and the Bureau of Indian Affairs is GRANTED in part. This case is dismissed without prejudice for lack of subject matter jurisdiction. ORDERED that this case is CLOSED by Judge Philip A. Brimmer on 09/04/14.(jhawk, ) (Entered: 09/04/2014) |
| 09/04/2014 | 37 | FINAL JUDGMENT. ORDERED that this case is DISMISSED without prejudice for lack of subject matter jurisdiction. ORDERED that judgment is hereby entered in favor of defendants the United States of America, the Department of the Interior, and the Bureau of Indian Affairs and against plaintiffs Homer Flute, Robert Simpson, Jr., Thompson Flute Jr., and Dorothy Wood. ORDERED that defendants are AWARDED their costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. by Clerk on 09/04/14. (jhawk, ) (Entered: 09/04/2014) |
| 10/01/2014 | 38 | NOTICE OF APPEAL as to 37 Clerk's Judgment,,, Set/Clear Flags,, by Plaintiffs Homer Flute, Thompson Flute, Jr, Robert Simpson, Jr, Dorothy Wood (Filing fee $ 505, Receipt Number 1082−4071797) (Strimple, Dallas) (Entered: 10/01/2014) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01836-PAB-CBS

HOMER FLUTE,
ROBERT SIMPSON, JR.,
THOMPSON FLUTE, JR., and
DOROTHY WOOD, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA,
THE DEPARTMENT OF THE INTERIOR, and
THE BUREAU OF INDIAN AFFAIRS,

      Defendants.

---

### ORDER

---

    This matter is before the Court on Defendants' Motion to Dismiss [Docket No. 17] filed by defendants the United States of America ("United States"), the Department of the Interior ("DOI"), and the Bureau of Indian Affairs ("BIA"). This case arises from the United States Army's massacre of certain bands of the Cheyenne and Arapaho Indian Tribes along the banks of Colorado's Big Sandy Creek on November 29, 1864. The defendants acknowledge in their motion that "[i]n all of American history there is no episode more contemptible nor more abhorrent than the depredations of the United States cavalry on the banks of Sand Creek in Colorado Territory during the early morning hours of November 29, 1864. The 'Sand Creek Massacre' was a tragedy and a disgrace." Docket No. 17-1 at 8. Plaintiffs are descendants of the victims of the Sand Creek Massacre. Plaintiffs seek an accounting of the reparation payments promised to

their ancestors in the 1865 Treaty of Little Arkansas and an award of funds found still owing.

## I. BACKGROUND

### A. Parties

The complaint alleges as follows.  Plaintiffs Homer Flute, Robert Simpson, Jr., Thompson Flute, Jr., and Dorothy Wood descend from bands of the Cheyenne and Arapaho Indians who were victims of the Sand Creek Massacre.  Docket No. 1 at 2, ¶ 2.  Plaintiffs bring this case on behalf of themselves and all descendants of the massacre's victims.  *Id*. at 14, ¶ 70.  Plaintiffs reside in Oklahoma and are each members of a federally recognized Indian tribe.  *Id*. at 2, ¶ 2.

The BIA was created in 1849 within the Department of the Army and subsequently moved to the DOI.  *Id*. at 2, ¶ 4.  In 1849, the DOI assumed responsibility for Indian affairs on behalf of the federal government.  *Id*. at 2, ¶ 5.  Plaintiffs allege that the DOI has, since 1866, controlled and held in trust reparation payments owed to plaintiffs.  *Id*.

### B. The Sand Creek Massacre

On February 18, 1861, the United States entered into the Treaty of Ft. Wise with the Arapaho and Cheyenne Tribes of the Upper Arkansas River (the "Tribes"), ceding the Tribes a tract of land at the mouth of the Sandy Fork of the Arkansas River and promising to protect the tribes "in the quiet and peaceful possession of the said tract of land so reserved for their future home, and also their persons and property thereon, during good behavior on their part."  Treaty between the United States of America and

2

the Arapaho and Cheyenne Indians of the Upper Arkansas River, arts. 1 & 4, Feb. 18,

1861, 12 Stat. 1163.

In June 1864, Territorial Governor and Superintendent of Indian Affairs John

Evans conspired with Colonel John Chivington of the U.S. Army to take action against

the peaceful Tribes.  Docket No. 1 at 4, ¶ 9.  At a series of meetings in September and

October 1864, tribal leaders Bull Bear, One-Eye, Left Hand, Little Raven, White

Antelope, and Black Kettle expressed their peaceful intentions.  Major Edward

Wynkoop, Colonel Chivington, and Governor Evans told them that, to prove their good

intentions, they should relocate their villages to Fort Lyon in the Colorado Territory.  *Id*.

at 4-5, ¶¶ 11-16.  In late October 1864, the Tribes relocated to Fort Lyon.  *Id*. at 5, ¶ 17.

The Cheyenne, led by Black Kettle, arrived at Fort Lyon, *id*. at ¶ 21, and were

told they could set up camp at Sand Creek and hunt bison.  *Id*. at ¶ 22.  Black Kettle

and his band of Cheyenne settled at the Smoky Hill Crossing of Sand Creek.  *Id*. at

¶ 23.

On November 14, 1864,  in preparation for the massacre, Colonel Chivington

ordered the First and Third Colorado Cavalries to march from Denver to Fort Lyon.  *Id*.

at ¶ 24.  At noon on November 28, 1864, Colonel Chivington and his troops arrived at

Fort Lyon.  *Id*. at ¶ 30.  Between 675 and 700 soldiers then marched for Sand Creek,

*id*. at 8, ¶ 36, arriving at the camp at sunrise on November 29, 1864.  *Id*. at ¶ 37.  Black

Kettle, the chief of the camp, flew an American flag with a white flag beneath it,

signaling that the camp was under a truce.  *Id*.  Nevertheless, the soldiers began firing

on the Indians.  *Id*. at 8-9.  Chief White Antelope ran towards the troops to convince

them to stop shooting.  *Id*. at 9, ¶ 40.  He was shot and killed.  Indians who tried to flee were chased down and shot.  The massacre lasted until 3:00 p.m.  *Id*. at ¶ 43.  The number of casualties is uncertain; eyewitnesses reported that the majority were women and children.  *Id*. at ¶ 44.

### C.  Reparations

Once the federal government learned of the massacre, Major Wynkoop was ordered to retake command of Fort Lyon and to perform an investigation.  *Id*. at 11, ¶ 54.  He collected soldiers' eyewitness accounts.  *Id*.  On January 4, 1865, Colonel Chivington resigned his commission.  He was mustered out of service on January 8, 1865 and, the following month, a military commission in Colorado launched an investigation into his conduct.  *Id*. at ¶¶ 55, 58.  On January 10, 1865, the United States House of Representatives ordered the Committee on the Conduct of War to inquire into and write a report on the facts of the massacre.  *Id*. at ¶ 56.

In response to the massacre, the federal government signed the Treaty of Little Arkansas on October 14, 1865.  *Id*. at 11-12, ¶ 60.  The Treaty provides in pertinent part:

> The United States being desirous to express its condemnation of, and, as far as may be, repudiate the gross and wanton out-rages perpetrated against certain bands of Cheyenne and Arapahoe Indians, on the twenty-ninth day of November, A.D. 1864, at Sand Creek, in Colorado Territory, . . . will grant three hundred and twenty acres of land by patent to each of the following-named chiefs of said bands, viz: Moke-ta-ve-to, or Black Kettle; Oh-tah-ha-ne-so-weel, or Seven Bulls; Alik-ke-home-ma, or Little Robe; Moke-tah-vo-ve-hoe, or Black White Man; and will in like manner grant to each other person of said bands made a widow, or who lost a parent upon that occasion, one hundred and sixty acres of land, the names of such persons to be ascertained under the direction of the Secretary of the Interior . . . . The United States will also pay in United States securities, animals, goods,

4

provisions, or such other useful articles as may, in the discretion of the Secretary of the Interior, be deemed best adapted to the respective wants and conditions of the persons named in the schedule hereto annexed, . . . the sums set opposite their names, respectively, as a compensation for property belonging to them, and then and there destroyed or taken from them by the United States troops aforesaid.

*Id*. at 12 (Treaty between the United States of America and the Cheyenne and Arapahoe Tribes of Indians, art. 6, Oct. 14, 1865, 14 Stat. 703, 889-90).

Six months later, the United States signed the Medicine Lodge Treaty. *Id*. at 12,

¶ 61.  The Medicine Lodge Treaty provides in pertinent part:

In lieu of all sums of money or other annuities provided to be paid to the Indians herein named, under the treaty of October fourteenth, eighteen hundred and sixty-five, made at the mouth of the Little Arkansas, and under all treaties made previous thereto, the United States agrees to deliver at the agency house on the reservation herein named, on the fifteenth day of October, of each year, for thirty years, the following articles, to wit:–

For each male person over fourteen years of age, a suit of good, substantial woolen clothing, consisting of coat, pantaloons, flannel shirt, hat, and a pair of home-made socks.

For each female over twelve years of age, a flannel skirt, or the goods necessary to make it, a pair of woolen hose, twelve yards of calico and twelve yards of cotton domestics.

For the boys and girls under the ages named, such flannel and cotton goods as may be needed to make each a suit as aforesaid, together with a pair of woolen hose for each.

. . .

And, in addition to the clothing herein named, the sum of twenty thousand dollars shall be annually appropriated for a period of thirty years, to be used by the Secretary of the Interior in the purchase of such articles as, from time to time, the condition and necessities of the Indians may indicate to be proper. And if at any time, within the thirty years, it shall appear that the amount of money needed for clothing, under this article, can be appropriated to better uses for the tribe herein named, Congress may, by law, change the appropriation to other purposes; but, in no event, shall the amount of this appropriation be withdrawn or discontinued for the period named.

5

Treaty between the United States of America and the Cheyenne and Arapahoe Tribes

of Indians, art. 10, Oct. 28, 1867, 15 Stat. 593.  Plaintiffs contend that the Medicine

Lodge Treaty was never properly concluded.  Docket No. 1 at 13, ¶ 62.

On July 26, 1866, Congress appropriated money to pay the reparations.  *Id*. at

¶ 64.  The 1866 Indian Appropriations Act provides as follows:

> *Arapaho and Cheyenne Indians of the Upper Arkansas River*.  For reimbursing members of the bands of Arapaho and Cheyenne Indians who suffered at Sand Creek, November twenty-ninth, eighteen hundred and sixty-four, to be paid in United States securities, animals, goods, provisions, or such other useful articles as the Secretary of the Interior may direct, as per sixth article treaty of October fourteenth, eighteen hundred and sixty-five, thirty-nine thousand and fifty dollars.

14 Stat. 255, 267 (July 26, 1866).

The money appropriated was insufficient to compensate the individuals

described in the Treaty of Little Arkansas.  Docket No. 1 at 13, ¶ 64.  Instead of

distributing the appropriated money to the individual survivors as required under the

Treaty of Little Arkansas, the DOI gave money directly to the Tribes.  *Id*. at 13, ¶ 65.

The money that the government did not distribute to the Tribes was returned to surplus

on August 30, 1872.  *Id*. at ¶ 66.  Some, but not all, of the land promised in the Treaty

of Little Arkansas may have been transferred to individual Tribe members in the State

of Colorado.  *Id*. at ¶ 69.  The DOI has not made any effort to identify the individuals still

owed reparations.  *Id*. at 14, ¶ 67.  The government has never provided an accounting

of the property distributed, withheld, and still owing under the Treaty of Little Arkansas.

*Id*.

Based on these factual allegations, plaintiffs allege that defendants (1) are in breach of their federal trust responsibilities (first claim); (2) are in breach of their duty to provide plaintiffs an accounting (second claim); and (3) have unlawfully withheld or unreasonably delayed agency action (third claim).  Docket No. 1 at 17-20, ¶¶ 78-105.  Plaintiffs seek (1) an accounting of the funds held, managed, or controlled for the benefit of plaintiffs pursuant to the Treaty of Little Arkansas; (2) an order requiring the DOI to identify the individuals to whom reparations are owed, in the event the accounting indicates that reparations are still owing; (3) an order requiring defendants to make plaintiffs' trust funds whole, in the event the accounting indicates that reparations are still owing; and (4) attorney's fees and costs.  *Id*. at 20-21, ¶¶ 106-10.

On September 16, 2013, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Docket No. 17.  Plaintiffs oppose the motion.  Docket No. 26.

## II.  STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F .3d 1001, 1013 (10th Cir. 2003)).

7

When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent a defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.* Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim. Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the

8

court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (internal quotation marks and alterations omitted).

## III.  ANALYSIS

Defendants argue that the Court lacks jurisdiction because the federal

government has not waived its immunity to suit with respect to this case.  Docket No.

17-1 at 30-32.  In response, plaintiffs contend that defendants have waived sovereign

immunity via (1) section 702 of the Administrative Procedures Act ("APA") and (2) the

2009 DOI Appropriations Act.  Docket No. 26 at 18-23.

"It is axiomatic that the United States may not be sued without its consent and

that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*

("Mitchell II"), 463 U.S. 206, 212 (1983).  "[S]overeign immunity protects the United

States against judgments that would require an expenditure from public funds, that

interfere with public administration or that would restrain the Government from acting, or

to compel it to act."  *Hensel v. Office of the Chief Administrative Hearing Officer*, 38

F.3d 505, 509 (10th Cir. 1994) (quotations and citations omitted).  Sovereign immunity

is a jurisdictional bar to suit.  *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471,

475 (1994).

In order to determine whether either the APA or the 2009 Appropriations Act

waives defendants' sovereign immunity, the Court must determine whether plaintiffs

have identified a source for defendants' alleged trust responsibilities.

Plaintiffs rely on two sources for defendants' trust responsibilities – the Treaty of Little Arkansas and the 1866 Appropriations Act.  *See* Docket No. 26 at 16-18, 21. Plaintiffs describe their trust theory as follows: "Since the Treaty called for payment to specifically identified individuals, and Congress subsequently appropriated the funds to pay the individual decedents [sic] of the victims of the Sand Creek [Massacre] pursuant to [the] Treaty of Little Arkansas, those funds were necessarily held 'in trust' until they are ultimately distributed to the proper beneficiaries; an event which has never occurred."  *Id*. at 18.

The federal courts have long recognized "the distinctive obligation of trust incumbent upon the Government" in its dealings with Indians which imposes on the federal government "moral obligations of the highest responsibility and trust."  *Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942) (listing cases); *see also Cobell v. Norton*, 240 F.3d 1081, 1086 (D.C. Cir. 2001) (the government's trust responsibilities "are grounded in the very nature of the government-Indian relationship").  On its own, however, this general duty is not sufficient to support a cause of action for breach of trust.  *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo Nation* I"); *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 893 (D.C. Cir. 2014) ("neither the general trust relationship between the federal government and Indian Tribes nor the mere invocation of trust language in a statute . . . is sufficient to create a cause of action for breach of trust").

In *United States v. Mitchell*, 445 U.S. 535 (1980) ("*Mitchell I*"), and *Mitchell II*, 463 U.S. 206, the Court drew a distinction between statutes that create a "limited trust

relationship" or a "bare trust," stripped of legally enforceable obligations, and statutes that impose enforceable fiduciary duties.  In *Mitchell I*, the Court held that language in the General Allotment Act,[1] 25 U.S.C. §§ 331 *et seq*. (repealed by Pub. L. 106-462, Title I, § 106(a)(1), Nov. 7, 2000, 114 Stat. 2007), directing the Secretary of the Interior to "hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made" did not create an enforceable trust because the statute as a whole indicated that the "Indian allottee, and not a representative of the United States, [was] responsible for using the land for agricultural or grazing purposes."  445 U.S. at 541-43.

*Mitchell II* considered timber management statutes, 25 U.S.C. §§ 406-07, and their implementing regulations, 25 C.F.R. §§ 163.10 *et seq*., which "establish the 'comprehensive' responsibilities of the Federal Government in managing the harvesting of Indian timber."  463 U.S. at 222 (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980)).  In finding that this network of statutes created an enforceable trust, the Court stressed both that the statutes invested the BIA with near complete control "over the harvesting and management of tribal timber," *id*. ("Virtually every stage of the process is under federal control."), and that the BIA was required to

---

[1]"Under the General Allotment Act, beneficial title of the allotted lands vested in the United States as trustee for individual Indians.  The trust was to last for 25 years or more, at which point a fee patent would issue to the individual Indian allottee.  During the trust period, individual accounts were to be set up for each Indian with a stake in the allotted lands, and the lands would be managed for the benefit of the individual allottees.  Indians could not sell, lease, or otherwise burden their allotted lands without government approval.  Where tribes resisted allotment, it could be imposed.  While the Dawes Act may not have achieved assimilation, it did result in the widespread transfer of land from Indians to white settlers."  *Cobell v. Norton*, 240 F.3d 1081, 1087 (D.C. Cir. 2001) (internal citation omitted).

manage the resources for the benefit of the tribes.  *Id*. at 221-22 ("The regulatory

scheme was designed to assure that the Indians receive the benefit of whatever profit

[the forest] is capable of yielding.") (internal citation and quotation marks omitted).

Although the timber management statutes and regulations do not "expressly" create a

trust or fiduciary relationship, the Court held that such a relationship "necessarily arises

when the Government assumes such elaborate control over forests and property

belonging to Indians."  *Id*. at 225.  It further explained that "[a]ll of the necessary

elements of a common-law trust are present: a trustee (the United States), a beneficiary

(the Indian allottees), and a trust corpus (Indian timber, lands, and funds)."  *Id.*

The Court drew on the principles articulated in *Mitchell I* and *Mitchell II* when

deciding *Navajo Nation I*, 537 U.S. 488, and *United States v. White Mountain Apache

Tribe*, 537 U.S. 465 (2003), another pair of cases whose differing outcomes frame a

unified approach.  In *Navajo Nation I*, the Court held that the Indian Mineral Leasing

Act, 25 U.S.C. § 396a *et seq*., does not create a fiduciary relationship even though the

statute "requires Secretarial approval before coal mining leases negotiated between

Tribes and third parties become effective and authorizes the Secretary [of the Interior]

generally to promulgate regulations governing mining operations."  537 U.S. at 506-07

(internal citations omitted).  The Court found that the statute falls short because it does

not "'give the Federal Government full responsibility to manage Indian resources . . . for

the benefit of the Indians.'"  *Id*. at 507 (quoting *Mitchell II*, 463 U.S. at 224.  The Court

found that, on the contrary, the statute "aims to enhance tribal self-determination by

giving Tribes, not the Government, the lead role in negotiating mining leases with third parties." *Id.* at 508.

In *White Mountain Apache Tribe*, decided the same day as *Navajo Nation I*, the Court held that a 1960 statute providing the Secretary of the Interior limited authority to use a piece of reservation land created a trust relationship. 537 U.S. 465. The statute provided that the site of the Fort Apache Military Reservation would be "held by the United States in trust for the White Mountain Apache Tribe, subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed for the purpose." *Id.* at 469. The DOI exercised its right to use the land. *Id.* The Court found that, in addition to explicitly using the term of art "trust," the 1960 Act "proceeds to invest the United States with discretionary authority to make direct use of portions of the trust corpus" and that "it is undisputed that the Government has to this day availed itself of its option": "[a]s to the property subject to the Government's actual use, then, the United States has not merely exercised daily supervision but has enjoyed daily occupation, and so has obtained control at least as plenary as its authority over the timber in *Mitchell II*." *Id.* at 475; *see also id.* at 480 (Ginsburg, J., concurring) ("The dispositive question, accordingly, is whether the 1960 measure, in placing property in trust and simultaneously providing for the Government-trustee's use and occupancy, is fairly interpreted to mandate compensation for the harm caused by maladministration of the property.").

In *El Paso Natural Gas Co.*, the Court of Appeals for the District of Columbia offered a synthesis of these four cases, explaining that a "statute's invocation of trust

terminology is not itself dispositive" and that courts must instead consider whether the statute or regulation "establishes rights and duties that characterize a conventional fiduciary relationship." 750 F.3d at 895.  Applying this principle, the court held that "an express trust plus actual government control" does not create an enforceable trust unless the source of the express trust "afford[s] the government the right to use the [property] in question."[2]  *Id*. at 896-97.  The court further explained that it is "natural to infer that Congress intended that a correlative duty to maintain trust property would attach to an expressly provided right of use (if invoked)."  *Id*. at 897

The statute at issue in *El Paso Natural Gas Co.* provides that "any lands partitioned to the Navajo Tribe pursuant to [sections of this title] and the lands described in the Act of June 14, 1934 . . . shall be held in trust by the United States exclusively for the Navajo Tribe and as part of the Navajo Reservation."  25 U.S.C. § 640d-9(a).  The court found that this statute does not have a "hook" on which to peg a

---

[2]The court in *El Paso Natural Gas Co.* recognized the possibility that, because *Mitchell I*, *Mitchell II*, *Navajo Nation I*, and *White Mountain* concerned jurisdiction under the Indian Tucker Act, they may not be applicable to jurisdictional issues under other statutes, like the APA.  750 F.3d at 895.  The court "nevertheless appl[ied] the lessons articulated in the Mitchell cases. . . . for two reasons: because this been our approach in past cases and, as important, because the Tribe has not marshaled an argument that we should reconsider our approach."  *Id*.  In addition, the court pointed out that the decision in a subsequent case, *United States v. Navajo Nation*, 556 U.S. 287 (2009) ("*Navajo Nation II*"), was reached "without regard to damages unique to money damages."  *Id*. at 898 ("*If* a plaintiff identifies such a [rights-creating or duty-imposing statutory or regulatory] prescription, and *if* that prescription bears the hallmarks of a 'conventional fiduciary relationship,' *then* trust principles . . . could play a role in 'inferring that the trust obligation [is] enforceable by damages' . . . . But that must be the second step of the analysis, not . . . the starting point.") (quoting *Navajo Nation II*, 556 U.S. at 301) (emphasis in original) (internal citations omitted)).  In this case, the parties cite *Mitchell I*, Docket No. 17-1 at 30-31, and *Mitchell II*, Docket No. 26 at 17, and neither party argues that these cases are inapposite because they concerned jurisdiction under the Indian Tucker Act.

"correlative duty of management" and thus does not create an enforceable fiduciary relationship, even though the government did in fact exercise control over portions of the land described in the statute for a period of time. *El Paso Natural Gas Co*., 750 F.3d at 897 ("This is not enough, even if paired with allegations of governmental control at the Mill, the Dump, and the Highway 160 Site, because nothing in the pleadings or record suggest that the Government took control of the premises *pursuant* to § 640d-9(a).").

 As noted above, plaintiffs contend that a trust relationship arose when the government (1) pledged in the Treaty of Little Arkansas to transfer money, real property, and personal property to the survivors of the Sand Creek massacre; (2) appropriated money for this purpose; and (3) did not ultimately transfer the appropriated funds as required by the Treaty. Docket No. 26 at 18. Plaintiffs assert that it "would be difficult to imagine more clear language than was used in these laws":

> In Article VI of the Treaty, the United States agreed to pay reparations to the surviving families of those "who suffered at Sand Creek." 14 Stat. 703 at 889 to 890 (signed Oct. 14, 1865, and ratified by the United States Senate May 22, 1866). The Treaty then identified many of them *by name*. To guarantee that the United States fulfilled that obligation, Congress appropriated $39,050 "[f]or reimbursing *members* of the bands of Arapaho and Cheyenne Indians who suffered at Sand Creek." *See* 1866 Appropriations Act, 14 Stat. at 276 (emphasis added).

Docket No. 34 at 7 (emphasis in original). Docket No. 34 at 7-9. However, the Treaty of Little Arkansas and the 1866 Appropriations Act do not expressly refer to a trust, *compare Mitchell I*, 445 U.S. at 541-42 (statute providing that the government must "hold the land . . . in trust for the sole use and benefit" of Indian allottee created only a bare trust), do not contain other rights-creating or duty-imposing language, and are not

part of a network of statutes disclosing an overall intention to create a legally enforceable trust relationship. *Compare Mitchell II*, 463 U.S. at 223-24 ("In contrast to the bare trust created by the General Allotment Act, the statutes and regulations now before us clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians. They thereby establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities.").

Plaintiffs cite *Reuben Quick Bear v. Leupp*, 210 U.S. 50 (1908), and *Navajo Tribe of Indians v. United States*, 624 F.2d 981 (Ct. Cl. 1980), for the proposition that the reparations payments became the property of the individual descendants of the massacre victims when they were appropriated and that the government created a trust by taking control of these funds. Docket No. 34 at 7-9. This argument runs counter to *Navajo Nation II* that the "Federal Government's liability cannot be premised on control alone." 556 U.S. at 301.

Plaintiffs argue that this case is analogous to *Mitchell II* because there is "no practical difference between an obligation to individuals to manage funds, disburse funds, or operate funds" because "[e]ach of those actions is implied in the fiduciary relationship." Docket No. 34 at 8. First, plaintiffs' argument assumes the existence of the fiduciary relationship they are charged with establishing. Second, this argument is unavailing in light of *Navajo Nation I* and *El Paso Natural Gas Co.*, which distinguish between the government's statutory obligation to hold bare title to an asset and its right to actively use the asset, with the concomitant obligation to manage it according to the best interests of a third party beneficiary. *See* 537 U.S. at 506-07; 750 F.3d at 895.

16

The Treaty of Little Arkansas and the 1866 Appropriations Act did not accord the government any right to use or control the reparations; rather, these laws directed the government to make one-time payments or other discrete transfers of property to the specified individuals.  Since "nothing in the pleadings or record suggest that the Government took control of the [payments] *pursuant*" to the Treaty of Little Arkansas or the 1866 Appropriations Act, and since there is no express language or regulatory framework otherwise imposing a fiduciary duty, plaintiffs' allegations of "governmental control" do not establish an enforceable trust.  *See El Paso Natural Gas Co.*, 750 F.3d at 897.

## IV.  CONCLUSION

In the absence of an enforceable trust, 25 U.S.C. §§ 162a(d) and 4044 do not impose a legally required duty necessary to establish a waiver of sovereign immunity under the APA.  *See Norton*, 542 U.S. at 63-64.  Furthermore, plaintiffs' claims do not concern "losses to or mismanagement of trust funds" and thus do not fall within the 2009 DOI Appropriations Act.  *See* Pub. L. No. 111-88, 123 Stat. at 2922.  Finding that the United States has not waived sovereign immunity for this suit, the Court concludes that it lacks jurisdiction over plaintiffs' claims and must dismiss them without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

Wherefore, it is

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 17] filed by

defendants the United States of America, the Department of the Interior, and the

Bureau of Indian Affairs is GRANTED in part.  This case is dismissed without prejudice

for lack of subject matter jurisdiction.  It is further

**ORDERED** that this case is CLOSED.


DATED September 4, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01836-PAB-CBS

HOMER FLUTE,
ROBERT SIMPSON, JR.,
THOMPSON FLUTE, JR.,
DOROTHY WOOD, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA,
THE DEPARTMENT OF THE INTERIOR, and
THE BUREAU OF INDIAN AFFAIRS,

      Defendants.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and

pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order [Docket No.36] of Judge Philip A. Brimmer entered on

September 4, 2014, it is

**ORDERED** that this case is **DISMISSED** without prejudice for lack of subject

matter jurisdiction.  It is further

**ORDERED** that judgment is hereby entered in favor of defendants the United

States of America, the Department of the Interior, and the Bureau of Indian Affairs and

against plaintiffs Homer Flute, Robert Simpson, Jr., Thompson Flute Jr., and Dorothy

Wood.  It is further

**ORDERED** that defendants are **AWARDED** their costs, to be taxed by the Clerk

of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.


Dated at Denver, Colorado this 4th day of September, 2014.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

s/Jennifer Hawkins
_____

Jennifer Hawkins
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:13-cv-01836-PAB-CBS

HOMER FLUTE,
ROBERT SIMPSON, JR.,
THOMPSON FLUTE, JR., *and*
DOROTHY WOOD, *on behalf of themselves and others similarly situated*,

      *Plaintiffs*,

v.

THE UNITED STATES OF AMERICA,
THE DEPARTMENT OF THE ARMY,
THE DEPARTMENT OF DEFENSE,
THE DEPARTMENT OF THE INTERIOR, *and*
THE BUREAU OF INDIAN AFFAIRS,

      *Defendants*.

---

## PLAINTIFFS' NOTICE OF APPEAL

---

Notice is given that Homer Flute, Robert Simpson, Jr., Thompson Flute, Jr., and Dorothy Wood, on behalf of themselves and others similarly situated, plaintiffs in the above-captioned caste, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the final judgment entered in this action on the 4th day of September, 2014.

      Respectfully Submitted,

Date: <u>October 1, 2014</u>      <u>/s/Dallas L.D. Strimple</u>
                       DAVID F. ASKMAN, CO Bar No. 44423
                       The Askman Law Firm, LLC
                       2533 West 32nd Avenue
                       Denver, CO  80211
                       (720) 855-1533
                       dave@askmanlaw.com

DALLAS L.D. STRIMPLE
1723 E. 15th Street, Suite 100
Tulsa, OK  94104
(918) 347-6169
dallas@aamodt.biz

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on October 1, 2014, I electronically filed the foregoing NOTICE OF APPEAL, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record.

s/Dallas L.D. Strimple
DALLAS L.D. STRIMPLE, OK Bar No. 30266